**STANDARD CHLORINE OF DELAWARE, INC., Plaintiff-Appellant,**

v.

**Jackson D. LEONARD, d/b/a the Leonard Process Company, Defendant-Appellee.**

No. 52, Docket 31387.

United States Court of Appeals Second Circuit.

Argued Sept. 28, 1967.

Decided Oct. 19, 1967.

Bernard Furman, New York City (Epstein & Furman, New York City, of counsel), for plaintiff-appellant.

Abraham Fishbein, New York City (Jacob P. Lefkowitz, New York City, of counsel), for defendant-appellee.

Before LUMBARD, Chief Judge, and SMITH and KAUFMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Arbitration is often thought of as a quick and efficient method for determining controversies. Unfortunately, cases involving arbitration clauses sometimes are best remembered as monuments to delay because of the litigation and appeals antecedent to the actual arbitration. In any event, we shall deal with the incipient question—Is Judge Ryan's order staying the action in the district court pending arbitration appealable?

I.

Because our answer is in the negative, it will suffice to state the facts briefly. In 1965, Standard Chlorine of Delaware, Inc. ("Standard"), a Delaware corporation with its principal office in New Jersey, entered into a written agreement with Jackson D. Leonard, a New York resident, whereby Leonard was to provide the engineering skill and technical "know-how" to build a plant contemplated by Standard for the manufacturing of monochlorobenzine and dichlorobenzine. The agreement provided, in relevant part, that "any controversy between the parties * * * with respect to any of the performance of the parties under this Agreement" would be submitted to arbitration.[1] The plant was ultimately completed, but not to the satisfaction of Standard which charged that it was "inefficiently designed and constructed." Leonard disagreed. While the ensuing controversy appeared on its face to relate to the *performance* of Leonard, Standard did not seek arbitration. Instead, it sought recourse to litigation and instituted suit in the Southern District of New York. Leonard moved to have the suit stayed pending arbitration and Judge Ryan granted the motion.

---

1. The arbitration clause was drafted by Standard with the advice of counsel.

Even a cursory perusal of Standard's complaint reveals that it was drawn with the objective of avoiding arbitration. Judge Ryan correctly characterized it as "a deliberate hodgepodge of contradictory charges." The complaint couples a prayer for damages for breach of contract—a claim that is surely within the arbitration clause—with a request for damages for fraud and a demand that the entire contract (or alternatively the arbitration clause) be rescinded or reformed because of mutual mistake or because Standard was fraudulently induced to enter into the agreement. The experienced district court judge determined, however, that the charge of "fraudulent inducement" was a grasping for straws in the wind in order to escape arbitration. After stripping the complaint of its verbiage and argumentation, he found the alleged "fraud" was nothing more than a charge that Leonard had claimed he could perform his end of the bargain when it turned out he could not.[2] Judge Ryan, however, chose not to rule on the presence or absence of fraud, but based his decision on the narrow ground that the claim of fraud was insufficiently pleaded. In sum, he held that use by Standard of conclusory epithets such as "fraud" would avail it nothing when the facts revealed a simple action for damages based on poor performance.[3]

## II.

Consideration of the question of appealability must begin with the established federal policy against piecemeal litigation. "Finality as a condition of review is an historic characteristic of federal appellate procedure. It was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all." Cobbledick v. United States, 309 U.S. 323, 324–325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). The granting of a stay of an action pending arbitration must be distinguished from a final judgment dismissing an action because arbitration must still be pursued and it differs from an order compelling arbitration in an action brought solely for that purpose. See Alexander v. Pacific Maritime Assn., 332 F.2d 266 (9th Cir.), cert. denied, 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964). It is clear beyond dispute that an order—such as the one before us—in a continuing suit is not a "final decision" within 28 U.S.C. § 1291. Baltimore Contractors v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955); Wilson Brothers v. Textile Workers Union of America, 224 F.2d 176 (2 Cir. 1955), cert. denied, 350 U.S. 834, 76 S.Ct. 70, 100 L.Ed. 745 (1956). As Judge Friendly pointed out in Lummus Company v. Commonwealth Oil Refining Company, 297 F.2d 80, 86 (2d Cir. 1961), cert. denied, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962), "the arbitration cannot proceed to an enforceable result without further judicial action."[4] Whatever inconvenience Stand-

---

2. In addition to the complaint itself, Judge Ryan based his conclusion on a series of letters written by Standard to Leonard prior to the filing of the complaint but several months after Standard allegedly discovered that the plant did not operate satisfactorily. In these letters Standard complained of Leonard's "complete disregard of obligations under the contract" and his "inability to put the plant in operation" as promised; not a word was said about fraud or fraudulent inducement until 8 months later. Cf. In re Kinoshita & Co., 287 F.2d 951 (2d Cir. 1961).

3. Because of the narrow basis of decision the District Court found it unnecessary to decide whether the question of fraudu-

lent inducement should be determined under federal or state law. See Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L. Ed.2d 37 (1960). Jurisdiction was predicated on diversity, but on the papers before him Judge Ryan found it impossible to determine whether sufficient interstate commerce was involved so that the Federal Arbitration Act would control the arbitration. Both parties apparently assumed that federal law would govern. Because of our disposition of the case we find it unnecessary to reach the question.

4. We note that such an order does not fall within one of the judicially created exceptions intended to soften the rigor of the

ard might suffer because of the stay is no worse than that which results from an appellate court reversal of a final judgment because the lower court erred in issuing an interlocutory order.[5] In any event, the rationale for requiring finality as a condition of review has sound application here. Allowing procedural appeals in this case would be to encourage dilatory practices, put a premium on harassment and increase the cost of litigation. Compare Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551 (2d Cir., 1967).

But, Judge Ryan's order is appealable if it falls within a statutory exception to the finality requirement, 28 U.S.C. § 1292 (a) (1), which provides that "[i]nterlocutory orders * * * granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions" are appealable. Were this question one of first impression we would find little difficulty in agreeing with Judge Learned Hand that "[a]rbitration is merely a form of trial, to be adopted in the action itself, in place of the trial at common law". Murray Oil Products Co. v. Mitsui & Co., 146 F.2d 381, 383 (2d Cir. 1944). Compare Lummus Company v. Commonwealth Oil Refining Company, 297 F.2d 80 (2d Cir. 1961), cert. denied, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); but see Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956) (disapproving Judge Hand's statement).

But we are not writing on a clean slate. In a series of severely criticized decisions [6] culminating in Baltimore Contractors v. Bodinger, supra,[7] the Supreme Court indicated that *under certain circumstances* an order staying a suit pending arbitration must be considered an interlocutory injunction under § 1292. The Court analogized such orders to those of a court of equity before the merger of law and equity. It reasoned that a stay of a law type action must be considered equivalent to an injunction staying litigation pending in another court; but, it added, a stay of an equity type proceeding is to be considered akin to an order within the action itself. The Court apparently recognized that troublesome distinctions would create a formidable task for lower courts: "The reliance on the analogy of equity power to enjoin proceedings in other courts has elements of fiction in this day of one form of action. The incongruity of taking jurisdiction from a stay in a law type and denying jurisdiction in an equity type proceeding springs from the persistence of outmoded procedural differentiations." 348 U.S. at 184, 75 S.Ct. at 254. But the Court felt bound by the old technical distinctions, leaving to Congress the task of correcting the anomaly. With the Supreme Court grounding its holding against appealability in *Baltimore Contractors* on an admitted fiction, it is not surprising that the decisions of the lower federal courts, sometimes within the

---

finality requirement. Unlike Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), in which the Supreme Court held appealable an order denying a motion requiring plaintiff to post security for defendant's costs, Standard is asserting no important and independent collateral right, the denial of which will make ineffective any ultimate review. And, Forgay v. Conrad, 6 How. 201, 12 L.Ed. 404 (1848), is not apposite for it directed immediate delivery of physical property. See Radio Station WOW v. Johnson, 326 U.S. 120, 65 S.Ct. 1475, 89 L.Ed. 2092 (1945).

5. In this connection we note that following the decision of the District Court,

Leonard served notice of arbitration and has incurred substantial expense attempting to bring the matter before the American Arbitration Association.

6. See, e. g., Wright, Federal Courts § 102 (1963); 7A Moore's Federal Practice, pp. JC 424–27.

7. See also City of Morgantown v. Royal Ins. Co., 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949); Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942); Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935).

same circuit, are not easily reconcilable.[8] This court has on occasion indicated that we would ɒe guided by the principle that orders compelling arbitration made in an independent proceeding under section 4 of the United States Arbitration Act[9] would be appealable while those issued in the course of a continuing suit would not be. Farr & Co. v. Cia. Intercontinental De Navegacion, 243 F.2d 342 (2d Cir. 1957).[10] While we do not harbor the illusion that we can harmonize all the decisions in this obfuscated area, it seems clear to us that this court has been guided by the technical distinctions between equity and law claims sanctioned by the Supreme Court in *Baltimore Contractors*.[11] And, we agree with the Fifth Circuit that the rule that has emerged from the many decisions is that "An order staying or refusing to stay proceedings in the District Court is appealable under § 1292(a) (1) only if (A) the action in which the order was made is an action which, before the fusion of law and equity, was by its nature an action at law; *and* (B) the stay was sought to permit the prior determination of some *equitable* defense or counterclaim." Jackson Brewing Co. v. Clarke, 303 F.2d 844, 845 (5th Cir.), cert. denied, 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed.2d 124 (1962) (emphasis in original).

### III.

■ It remains for us only to apply that principle to the present case. Leonard tells us that because he pleaded no equitable defense or counterclaim, we need not decide whether Standard's complaint sounded in law or in equity; that in either case the order is not appealable. But this argument ignores the full import of the Supreme Court's holding, for the Court has held that "the special defense setting up the arbitration agreement is [itself] an equitable defense". Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935) (Brandeis, J.). Thus, almost 30 years after the supposed complete merger of. law and equity, we find it frustratingly necessary to determine whether Standard's complaint is properly characterized as an action at law or a proceeding in equity.

Fortunately, the problem of classification is not overly difficult for we begin with the fact that Standard's complaint, in its own words, characterized the requested relief of reformation or rescission as *equitable*. But we need not stop with Standard's own description of its complaint, for it is clear that requests for reformation and rescission have traditionally been considered equitable in nature. Cf. Smith v. Bear, 237 F.2d 79 (2d Cir. 1956); Greenhood v. Orr & Sembower, Inc., 158 F.Supp. 906 (D. Mass.1958). See 5 Moore's Federal Practice ¶¶ 38.22 and 38.23 (2d ed. 1966). We have not overlooked the fact that Standard sought the legal remedy of damages for fraud or that the grounds advanced for reformation were alleged mutual mistake and Leonard's claimed fraud. But Standard also sought dam-

---

**8.** Compare Travel Consultants, Inc. v. Travel Management Corp., 367 F.2d 334 (D.C. Cir. 1966), cert. denied, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 785 (1967) (applying the rule in *Baltimore Contractors*), with Blount Brothers Const. Co. v. Troitino, 381 F.2d 267 (D.C. Cir. Feb. 10, 1967) (stay order unappealable; no consideration of *Baltimore Contractors* and its progenitors).

**9.** Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, provides that in appropriate cases a special suit can be instituted to compel arbitration.

**10.** But see Prima Paint Corp. v. Flood & Conklin Mfg. Co., 360 F.2d 315 (2d Cir.

1966), affirmed, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

**11.** See, e. g., Korody Marine Corp. v. Minerals and Chem. Philipp Corp., 300 F.2d 125 (2d Cir. 1962) (per curiam); Armstrong-Norwalk Rubber Corp. v. Local Union No. 283, 269 F.2d 618 (2d Cir. 1959); Wilson Brothers v. Textile Workers Union of America, 224 F.2d 176 (2d Cir. 1955), cert. denied, 350 U.S. 834, 76 S.Ct. 70, 100 L.Ed. 745 (1956). Compare Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80 (2 Cir. 1961), cert. denied, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962).

ages for breach of contract which, because of the arbitration clause, could only be granted after the contract was reformed. And as Professor Moore posits: "Where an action is brought to reform a contract and to recover on it as reformed, all the issues, including damages, are for the court since equity having taken jurisdiction would decide the entire controversy." 5 Moore's Federal Practice ¶ 38.22, p. 183 (2d ed. 1966). Under ·these circumstances, the request for reformation or rescission cannot be considered merely incidental. In the application of the rationale of *Baltimore Contractors* to this case, we must conclude that Standard's complaint was sufficiently equitable in nature so that Judge Ryan's order is not appealable. We cannot accept the fictional premise that in the case before us we are dealing with an order akin to that where one court is staying proceedings in another court.[12]

While we recognize that we are compounding technical distinctions given us by a higher court in applying them to this case, we believe it preferable to adopting the alternatives of either glossing over differences deemed important by the Supreme Court, or accepting extensive delays in cases such as this.[13] Justice Jackson stated it well in another context, "To pull one misshapen stone out of the grotesque structure is more likely simply to upset its present balance between adverse interests than to establish a rational edifice." Michelson v. United States, 335 U.S. 469, 486, 69 S.Ct. 213, 224, 93 L.Ed. 168 (1948).

The appeal is dismissed.[14]

---

12. Standard cites 3 instances in which it claims this Court has entertained appeals involving precisely the same facts as those now before us. It is true that in Prima Paint Corp. v. Flood & Conklin Mfg. Co., supra, we heard an appeal from an order staying a suit pending arbitration although the suit was brought for the equitable relief of rescission. But the question of appealability was not before the court and the appeal was dismissed as frivolous. In Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S. Ct. 27, 5 L.Ed.2d 37 (1960), the question of appealability was not discussed. In any event, it appears that the original suit in *Lawrence* involved a single cause of action at law for the tort of fraudulent misrepresentation. In In re Kinoshita & Co., 287 F.2d 951 (2d Cir. 1961), the order to compel arbitration was not made in a continuing suit but in a separate proceeding brought under § 4 of the Federal Arbitration Act, 9 U.S.C. § 4. It was therefore appealable. Farr Co. v. Cia. Intercontinental De Navegacion, 243 F. 2d 342 (2d Cir. 1957).

13. Although we have stressed the technical nature of our decision, it is well to note that the result is not inappropriate on the facts before us. For to the extent Standard's complaint sets forth a cause of action at law for damages for breach of contract, it should clearly go to arbitration under the arbitration clause of the agreement. We also note that the doctrine of *Baltimore Contractors* has compelled other courts to reach results they have recognized as anomalous, Travel Consultants, Inc. v. Travel Management Corp., 367 F.2d 334 (D.C. Cir. 1966), cert. denied, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 785 (1967), and to characterize a complaint as "essentially one in equity" —thus dismissing the appeal—although it contained legal elements, Alexander v. Pacific Maritime Association, 332 F.2d 266 (9th Cir.), cert. denied, 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964).

14. This does not mean that stay orders in circumstances such as those before us are immune from review by this court. We recognize that we have the power to issue a writ of mandamus that would reach the District Judge's order. Nevertheless, mandamus is not a substitute for appeal, Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953); Ex parte Fahey, 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947); Alcoa S.S. Co. v. Ryan, 211 F.2d 576, 577 (2d Cir. 1954) and it is not to be used as a method of appealing from an interlocutory order not made appealable by statute, Abrams v. McGohey, 260 F.2d 892 (2d Cir. 1958). Here, appeal from the final judgment is a clearly adequate remedy and the extraordinary writ would be inappropriate. Compare Ex Parte Fahey, supra.